# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Condemnation by the | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, of | : | |
| Right-of-Way for State Route 0095, | : | |
| Section BSR, in the City of Philadelphia | : | |
| | : | |
| Appeal of: Commonwealth of | : | No. 1308 C.D. 2014 |
| Pennsylvania, Department of | : | Argued:  October 7, 2015 |
| Transportation | : | |

**BEFORE:  HONORABLE DAN PELLEGRINI, President Judge[1]**
**HONORABLE MARY HANNAH LEAVITT, Judge[2]**
**HONORABLE P. KEVIN BROBSON, Judge**
**HONORABLE PATRICIA A. McCULLOUGH, Judge**
**HONORABLE ANNE E. COVEY, Judge**

**OPINION BY JUDGE BROBSON**          **FILED:  January 29, 2016**

The Commonwealth of Pennsylvania, Department of Transportation (PennDOT), appeals from an order of the Court of Common Pleas of Philadelphia County (trial court), sustaining the preliminary objections of Row-Row, LLC (Row-Row), to a declaration of taking filed by PennDOT.  The trial court concluded that PennDOT's declaration of taking was untimely filed under Section 302(e) of the Eminent Domain Code, 26 Pa. C.S. §302(e).  For the reasons that follow, we reverse.

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

On March 7, 2013, the Secretary of Transportation (Secretary) signed and authorized a plan of acquisition (2013 Plan) by eminent domain to acquire 44 properties at the base of the Betsy Ross Bridge as part of a major construction project to improve Interstate 95 in Philadelphia. Four of the properties are owned by Row-Row. On March 27, 2013, PennDOT filed the 2013 Plan to acquire the 44 properties with the Philadelphia County Recorder of Deeds. Approximately one year later, on February 27, 2014, the Secretary signed a revised plan (2014 Plan), which purported to revise and reauthorize the 2013 Plan. On March 7, 2014, PennDOT recorded the 2014 Plan by filing it with the Recorder of Deeds. On April 21, 2014, PennDOT filed a declaration of taking condemning the 44 properties.

Row-Row filed preliminary objections arguing, *inter alia*, that PennDOT's declaration of taking was untimely filed under Section 302(e) of the Eminent Domain Code. In its response, PennDOT requested that Row-Row's preliminary objections be dismissed or that a hearing be held on any evidentiary issues. On July 1, 2014, the trial court issued an order sustaining Row-Row's preliminary objections and striking PennDOT's declaration of taking as untimely. The trial court did so without holding a hearing. Citing *In re Redevelopment Authority of City of Allentown*, 31 A.3d 321 (Pa. Cmwlth. 2011) (*Ribbon Works*), the trial court held that PennDOT could not extend the time for filing its declaration of taking by reauthorizing the plan of acquisition. Because PennDOT filed its declaration of taking more than one year after the Secretary's initial authorization on March 7, 2013, the trial court held that it was untimely under Section 302(e) of the Eminent Domain Code and sustained Row-Row's preliminary objections.

2

On appeal,[3] PennDOT contends that the trial court erred in sustaining Row-Row's preliminary objections for two reasons. First, it argues that the trial court erred in concluding that PennDOT's filing of a declaration of taking was untimely. Second, PennDOT asserts that the trial court should have, at the very least, held an evidentiary hearing.

At the outset, we note that "[t]he power of the Commonwealth to acquire private property through the use of it[s] eminent domain powers directly flows from its attributes as the sovereign." *In re Condemnation of 110 Washington St., Borough of Conshohocken, Pa., by Redevelopment Auth. of Cnty. of Montgomery for Urban Renewal Purposes*, 767 A.2d 1154, 1158 (Pa. Cmwlth.), *appeal denied*, 788 A.2d 379 (Pa. 2001). In *Peters v. City of Reading*, 184 A. 23, 24 (Pa. 1936), our Supreme Court explained that "[t]he right of eminent domain is an attribute of sovereignty, inherent in the state, to be exercised subject to applicable provisions of the Constitution[4] and in accord with statutes regulating procedure. It is generally exercised by the state, or by agencies to which the state delegates the power . . . ." *Peters*, 184 A. at 24. The Eminent Domain Code provides "a complete and exclusive procedure and law to govern all condemnations of property for public purposes." Section 102 of the Eminent Domain Code, 26 Pa. C.S. § 102. It defines the term "condemn" as "[t]o take, injure or destroy property by authority of law for a public purpose." Section 103

---

[3] "In eminent domain cases, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law." *Appeal of Heim*, 617 A.2d 74, 76 (Pa. Cmwlth. 1992), *appeal denied*, 629 A.2d 1385 (Pa. 1993).

[4] Article I, Section 10 of the Pennsylvania Constitution provides, in pertinent part that "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

3

of the Eminent Doman Code, 26 Pa. C.S. § 103. The Eminent Domain Code, however, "does not confer or limit the authority to condemn." *In re Condemnation Proceeding by Twp. of Lower Macungie, Lehigh Cnty.*, 717 A.2d 1105, 1107 (Pa. Cmwlth. 1998), *appeal denied*, 738 A.2d 458 (Pa. 1999).

Relevant to the matter now before the Court, Section 2003 of the Administrative Code of 1929[5] (Administrative Code) grants PennDOT the power of eminent domain and requires PennDOT to file a plan of acquisition when exercising that power. To that end, Section 2003 of the Administrative Code provides, in relevant part, that the Department of Transportation

> shall have the power, and its duty shall be:
>
> . . . .
>
> (e)(1) To acquire, by gift, purchase, condemnation or otherwise, land in fee simple or such lesser estate or interest as it shall determine, in the name of the Commonwealth, for all transportation purposes, including marking, rebuilding, relocating, widening, reconstructing, repairing and maintaining State designated highways and other transportation facilities. . . .
>
> . . . .
>
> (6) In order to acquire land under this clause, a description or plan thereof shall be prepared, containing the names of the owners or reputed owners, an indication of the estate or interest to be acquired and such other information as the department shall deem necessary. *Execution by the secretary of such description or plan shall constitute authority for the filing of a declaration of taking* in accordance with . . . the "Eminent

---

[5] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 513.

4

Domain Code."[6]  *The description or plan shall be*
*filed as a public record in the department.*

(Emphasis added) (footnote omitted).  In order to effectuate a taking, Section 302(e) of the Eminent Domain Code provides, in relevant part, that "[t]he condemnor shall file within one year of the action authorizing the declaration of taking a declaration of taking covering all properties included in the authorization not otherwise acquired by the condemnor within this time."

Turning to the issues on appeal, we consider whether the trial court erred in concluding that PennDOT's filing of a declaration of taking was untimely. PennDOT argues that, for purposes of determining timeliness, the trial court improperly considered only the date of the initial plan authorized on March 7, 2013, and ignored the revised plan authorized on February 27, 2014. Based on its reading of the above-quoted statutory provisions, PennDOT argues that "[t]here is no legal distinction under Section 2003(e)(6) of the Administrative Code between an original authorization" of a plan and a subsequent "revision and reauthorization of such plan" which occurs in "the normal course of highway design and engineering."  (PennDOT's Br. at 10.)  PennDOT maintains that both the 2013 Plan and the 2014 Plan constitute (1) a "plan" executed by the Secretary of PennDOT for purposes of authorizing condemnation pursuant to Section 2003(e)(6) of the Administrative Code and (2) an "action authorizing the declaration of a taking" pursuant to Section 302(e) of the Eminent Domain Code.

---

[6] The former Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, *formerly* 26 P.S. §§ 1-101-to-1-903, repealed by Section 5 of the Act of May 4, 2006, P.L. 112, applies to condemnations prior to September 1, 2006.  Section 1 of the Act of May 4, 2006, No. 2006-34, enacted the consolidated Eminent Domain Code, 26 Pa. C.S. §§ 101-1106, which applies to condemnations occurring on or after September 1, 2006.

Moreover, "[t]here is nothing limiting revisions or changes to the plans, reauthorization[,] or the drawing or filing of new plans," and the Eminent Domain Code "contains no limits on how many times authorization may occur." (PennDOT's Br. at 13.)

In support, PennDOT cites the well-settled rule that courts should "afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation." *Winslow-Quattlebaum v. Md. Ins. Grp.*, 752 A.2d 878, 881 (Pa. 2000).

Applying the principles of statutory construction,[7] PennDOT argues that the General Assembly could not have intended to restrict the process of condemnation to one year from the first set of plans drawn, because such a result would be absurd, impossible of execution, unreasonable, and against public

---

[7] When interpreting a statute, this Court is guided by the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501-1991, which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa. C.S. § 1921(c). "A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *Bethenergy Mines Inc. v. Dep't of Envtl. Prot.*, 676 A.2d 711, 715 (Pa. Cmwlth.), *appeal denied*, 685 A.2d 547 (Pa. 1996). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. § 1921(a). It is presumed "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa. C.S. § 1922(2). Thus, no provision of a statute shall be "reduced to mere surplusage." *Walker*, 842 A.2d at 400. It is also presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S. § 1922(1). Statutes *in pari materia*, statutes that relate to the same subject, shall be construed together, if possible, as one statute. 1 Pa. C.S. § 1932(b); *Roop v. Dep't of Transp., Bureau of Driver Licensing*, 6 A.3d 1, 3 (Pa. Cmwlth. 2010), *appeal denied*, 26 A.3d 484 (Pa. 2011).

6

interest. PennDOT explains that some complicated projects, like the instant project, involve the acquisition by partial or total condemnation of more than 40 parcels for a single construction section and that each condemnation may have multiple claims with multiple fee owners, easement holders, tenants, or outdoor advertising devices and may involve the relocation of buildings, owners, or tenants. Negotiations to reach an amicable settlement on all of the acquisitions and claims may take more than a year. Under the trial court's interpretation of the statutory provisions, PennDOT would be precluded, possibly forever, from proceeding with roadway improvements needed to address important public interests if PennDOT failed to acquire or condemn all the land needed for the project within the one-year period of the filing of the initial authorization.

PennDOT also argues that the trial court wrongly applied Section 302(e) of the Eminent Domain Code as if it were a "statute of limitations" by prohibiting reauthorization after expiration of the one-year period following the authorization. PennDOT contends that the central purposes of Section 302(e) are to release properties from potential stigma of a pending condemnation after one year if a project is delayed following action to authorize the condemnation and to prohibit administrators from condemning property under stale authorizations from the condemnor's governing body. It was not intended to prohibit artificially the completion of a public project if acquisition is not accomplished or a declaration of taking filed within one year of the authorization of the use of condemnation. Thus, applying Section 302(e) of the Eminent Domain Code to the September 27, 2014 authorization date, PennDOT argues that its declaration of taking is timely. PennDOT disputes that our earlier decision in *Ribbon Works* requires a contrary conclusion.

7

Row-Row counters that nothing in the Administrative Code or the Eminent Domain Code permits a condemnor to reauthorize indefinitely a plan of acquisition. Row-Row relies on the principle that courts must strictly construe the Eminent Domain Code because it is in derogation of private property rights. *In re Condemnation of 110 Washington St., Borough of Conshohocken*, 767 A.2d at 1159 (quoting *Lance's Appeal*, 55 Pa. 16, 25-26 (1867)). It argues that the trial court's decision is supported by this Court's decision in *Ribbon Works*.

We agree with PennDOT that Section 302(e) of the Eminent Domain Code cannot be interpreted or enforced as though it were a statute of limitations. A statute of limitations is a "procedural device[] which bar[s] recovery on a viable cause of action" unless the action is filed within a specified period of time after an injury occurs. *Miller v. Stroud Twp.*, 804 A.2d 749, 752 (Pa. Cmwlth. 2002) (quoting *Altoona Area Sch. Dist. v. Campbell*, 618 A.2d 1129, 1134 (Pa. Cmwlth. 1992)). "The purpose of any statute of limitations is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims." *Insurance Co. of N. Am. v. Carnahan*, 284 A.2d 728, 729 (Pa. 1971). A declaration of taking, on the other hand, does not commence a cause of action. *In re Condemnation of Stormwater Mgmt. Easements*, 829 A.2d 1235, 1237 (Pa. Cmwlth. 2003). Rather, a declaration of taking is filed for the purpose of taking property and "determines the time when the condemnation is effected and when title passes to the condemnor." *Id.*

Furthermore, statute of limitations for civil actions and proceedings are contained in Chapter 55 of the Judicial Code, 42 Pa. C.S. §§ 5521-5538. The only statutes of limitations set forth with regard to eminent domain actions are contained in Section 5527 of the Judicial Code, 42 Pa. C.S. § 5527, relating to the

8

filing of petitions for the appointment of viewers, which are actions at law for money damages. The filing of a declaration of taking is not addressed in Chapter 55 of the Judicial Code. Rather, the time-period for the filing of a declaration of taking is set forth in Section 302 of the Eminent Domain Code.

To interpret Section 302(e) of the Eminent Domain Code in a manner consistent with a statute of limitations would lead to an absurd result that could not have been intended by the General Assembly. Under the trial court's application of Section 302(e), a condemnor would be required to file all the necessary declarations of taking within the one-year period or forever be barred from proceeding with the taking. Such a result could jeopardize a condemnor's ability to perform necessary public improvements or even to complete public improvements that have been started and not finished. Certainly this could not have been the intent of the General Assembly as the public is not served by such an approach.

Our conclusion that Section 302(e) of the Eminent Domain Code does not act as a statute of limitations is bolstered by the fact that Section 302(e) appears to be a directory, rather than a mandatory, statutory provision. In *In re: Sale of Real Estate by Lackawanna County Tax Claim Bureau*, 22 A.3d 308 (Pa. Cmwlth.) (*Lackawanna County*), *appeal denied*, 32 A.3d 1279 (Pa. 2011), we explained:

> Whether a statute is mandatory or directory must be determined by considering legislative intent gleaned from review of the entire statute and from considering the nature and object of the statute and the consequences of the construction of it one way or the other. If the thing directed to be done is the essence of the thing required, the statute is mandatory. If, however, the statute merely directs that certain proceedings be done in a certain manner or at a certain time, it is directory. Failure to follow a mandatory statute renders the proceedings void, whereas failure to follow a directory statute does not.

9

*Lackawanna Cnty.*, 22 A.3d at 314 (citations omitted) (quoting *W. Penn Power Co. v. Pa. Pub. Util. Comm'n*, 521 A.2d 75, 78 (Pa. Cmwlth. 1987)). We further explained that "[t]o hold that a provision is directory[,] rather than mandatory, does not mean that it is optional—to be ignored at will. Both mandatory and directory provisions of the legislature are meant to be followed. It is only in the *effect* of non-compliance that a distinction arises." *Id.* (quoting *Dep't of Transp., Bureau of Driver Licensing v. Claypool*, 618 A.2d 1231, 1232 (Pa. Cmwlth. 1992)). "[F]ailure to strictly adhere to the requirements of a directory statute will not nullify the validity of the action involved." *JPay, Inc. v. Dep't of Corrs.*, 89 A.3d 756, 763 (Pa. Cmwlth. 2014). The "failure to follow a directory provision will render such proceedings voidable under only certain circumstances." *Womack v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 83 A.3d 1139, 1142-43 (Pa. Cmwlth.), *appeal denied*, 94 A.3d 1011 (Pa. 2014).

With regard to the General Assembly's use of the word "shall," our Supreme Court has held that "[t]he word 'shall' . . . can be interpreted as mandatory or merely directory," *Francis v. Corleto*, 211 A.2d 503, 509 (Pa. 1965), and a court must "look to the intention and purpose of the statute in determining whether the word *shall* is to be given a permissive or imperative meaning," *Division 85, Amalgamated Transit Union v. Port Auth. of Allegheny Cnty.*, 208 A.2d 271, 272 (Pa. 1965). Generally, "[t]he provisions of a statute requiring public officers to act within a specified time are . . . directory, unless time is of the essence of the thing to be done, or the statute indicates that the provision is to be regarded as mandatory." *Cmwlth. ex rel. Fortney v. Wozney*, 192 A. 648, 649 (Pa. 1937).

In *Lackawanna County*, the issue before the Court was whether a provision of the Real Estate Tax Sale Law[8] (Tax Sale Law), which we paraphrased as providing that the county tax sale "[b]ureau 'shall' file a petition for judicial sale within one year of an unsuccessful upset tax sale," constituted a mandatory or directory statutory provision. *Lackawanna Cnty.*, 22 A.3d at 314. We first noted that the statutory provision at issue—Section 616 of the Tax Sale Law[9]—related to matters of "timing," contained "no provision barring judicial sale more than one year after an unsuccessful upset sale," and did "not provide a specific consequence for failure to conduct a judicial sale within that time period." *Id.* at 314-15. We opined that those factors favored a conclusion that the provision was directory in nature. *Id.* at 315. We next looked to the intent or purpose of the Tax Sale Law, observing that "'[t]he purpose of the . . . Tax Sale Law is to ensure the collection of taxes, not to deprive citizens of their property,' and, for that reason, courts have strictly construed the provisions of the Tax Sale Law as they relate to notice." *Id.* at 315 (alteration in original) (quoting *Aldhelm, Inc. v. Schuylkill Cnty. Tax Claim Bureau*, 879 A.2d 400, 403 (Pa. Cmwlth. 2005). We determined that the provision at issue, relating to timing, did not in any way implicate provisions relating to notice to be afforded property owners. Thus, interpreting the provision "as directory, rather than mandatory, . . . would not run afoul of the intention or purpose of the Tax Sale Law." *Id.* For those reasons, we concluded that the provision was directory. In so doing, we explained that failure to comply with the time period did not render the judicial sale void or a nullity, because Section 616 of

---

[8] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-.803.

[9] 72 P.S. § 5860.616.

11

the Tax Sale Law "was enacted to impose a mandatory judicial sale, which could be enforced by the interested party through a writ of mandamus to compel the [county tax sale b]ureau to act pursuant to Section 616." *Id.* We further opined "it would be improper for this Court to 'create' such a consequence where none had been provided" by the statute. *Id.*

In *Bartkowski Investment Group, Inc. v. Board of Commissioners of Marple Township*, 18 A.3d 1259 (Pa. Cmwlth. 2011), we similarly analyzed whether Section 1502 of The First Class Township Code,[10] Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. § 56502, was mandatory or directory in nature in order to determine whether a township's failure to record an ordinance in the official township ordinance book within one month of the date of passage as required by Section 1502 precluded the ordinance from ever becoming effective. In so doing, we applied a similar analysis as in *Lackawanna County*. We wrote:

> Section 1502 of [T]he First Class Township Code provides for no specific penalty when a municipality fails to record an ordinance within one month of passage other than that an ordinance is not "in force" until it is recorded. The provision . . . nowhere states that a consequence of the failure to record within the one-month period is that a municipality can *never* record the ordinance to make it effective and, therefore, failure to timely record renders the ordinance "invalid."
>
> . . . . There can be no dispute that the recording of an ordinance in a municipality's ordinance book serves, in part, a post-enactment notice function, and that failing to record an ordinance may result in a lack of

---

[10] Section 1502 of The First Class Township Code provides, in pertinent part: "No ordinance . . . shall be considered in force until the same is recorded in the ordinance book of the township. All township ordinances shall, within one month after their passage, be recorded by the township secretary in a book provided for the purpose."

post-enactment notice to interested parties. Thus, the mandatory nature of and purpose for requiring post-enactment notice through recording before an ordinance can become effective is clear. That mandate, however, does not necessarily warrant the conclusion that a municipality may not make an enactment effective through an untimely recording under Section 1502 of [T]he First Class Township Code. If post-enactment notice is the key, and untimely recording ultimately satisfies that need, then absent some other rationale relating to the timing of the effectiveness of an ordinance . . . , we view the time requirement for recording to be directory rather than mandatory.

*Bartkowski*, 18 A.3d at 1270-71.

Various factors support our conclusion that Section 302(e) of the Eminent Domain Code is directory in nature. First, Section 302(e) relates to "timing," as it requires PennDOT to act within a specified time period, and there is no provision barring condemnation more than one year after its authorization or providing a specific consequence for the untimely filing of a declaration of taking. There is also no provision in the Eminent Domain Code indicating that Section 302(e)'s timeframe is mandatory or that time is of the essence. There is certainly no provision that remotely suggests that the absence of strict compliance with the one-year filing period results in a condemnor forever being barred from proceeding with the condemnation. Second, the purpose of the Eminent Domain Code is to provide the procedure for the exercise of the sovereign's inherent power to condemn property for public purposes, not to deprive property owners of property. As noted above, the Eminent Domain Code "does not confer or limit the

13

authority to condemn,"[11] and, therefore, the Eminent Domain Code should not be interpreted to deny the sovereign's inherent power to condemn based on the untimeliness of the filing of a declaration. With regard to its procedures, the Eminent Domain Code provides property owners with notice and an opportunity to dispute the propriety of a taking or the amount to be paid for the property.[12] Strict adherence to the time period for the filing of the declaration of taking is not necessary in order to assure adequate notice of and opportunity to challenge the condemnor's actions.

Finally, as to Row-Row's argument that *Ribbon Works* is controlling, we disagree. In *Ribbon Works*, we considered an appeal of the Redevelopment Authority of the City of Allentown (RACA) from an order of the Court of

---

[11] *In re Condemnation Proceeding by Twp. of Lower Macungie, Lehigh Cnty.*, 717 A.2d at 1107.

[12] In addition to setting a time period for filing a declaration of taking, the Eminent Domain Code also provides that condemnation "shall be effected only by the filing in court of a declaration of taking with the security" and that the condemnor acquires title to the property on the date of the filing of the declaration of taking. Section 302(a) of the Eminent Domain Code, 26 Pa. C.S. § 302(a). Furthermore, the condemnor must give notice to the condemnee of the filing of the declaration of taking within thirty days after its filing. Section 305 of the Eminent Domain Code, 26 Pa. C.S. § 305. Section 302(b) of the Eminent Domain Code, 26 Pa. C.S. § 302(b), specifies the contents to be included in a declaration of taking, including the name and address of the condemnor, a reference to the statutes under which condemnation is authorized, a reference to the action authorizing the declaration, the purposes of the condemnation, a description of the property to be condemned, a statement of the nature of the title acquired (if any), a statement as to where a plan showing the condemned property may be inspected, and a statement of how just compensation has been made or secured. The notice to the condemnor contains the same information contained within the declaration of taking as required by Section 302(b) of the Eminent Domain Code, along with information regarding the declaration of taking itself (*i.e.*, caption of the case, the date of filing of the declaration of taking, and the court term and number). *See* 26 Pa. C.S. § 305(c). The condemnee may file preliminary objections to the condemnation within thirty days after being served with notice of condemnation. Section 306 of the Eminent Domain Code, 26 Pa. C.S. § 306.

Common Pleas of Lehigh County, which sustained preliminary objections filed by a property owner and struck an amended declaration of taking filed by RACA based on timeliness. The facts in *Ribbon Works* may be summarized as follows. The property owner purchased property in the City of Allentown in October 2003. On March 8, 2004, the property was determined to be blighted, and the property owner did not appeal. On June 14, 2005, RACA adopted a resolution authorizing its executive director to acquire the property through eminent domain.[13] The next day, the Allentown City Council also adopted a resolution authorizing RACA to acquire the property through eminent domain. On September 15, 2008, more than three years after RACA's resolution authorizing its use of eminent domain, RACA filed a declaration of taking, seeking to condemn the property owner's property. In response, the property owner filed preliminary objections, arguing that the declaration of taking was not filed within the one-year time period provided by Section 302(e) of the Eminent Domain Code. Thereafter, on December 3, 2008, RACA adopted another resolution continuing the authorization of the taking of the property. RACA then filed an amended declaration of taking on December 11, 2008, to which the property owners again filed preliminary objections. The court of common pleas sustained the preliminary objections and struck both the declaration of taking and the amended declaration. In striking the

---

[13] Section 12.1(a) of the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, added by the Act of June 23, 1978, P.L. 556, *as amended*, 35 P.S. § 1712.1(a), provides that "any [r]edevelopment [a]uthority shall have the power to acquire by purchase, . . . eminent domain or otherwise, any blighted property as defined in this section." Section 12.1(g) of the Urban Redevelopment Law, 35 P.S. § 1712.1(g), further provides that the "[p]ower of eminent domain shall be exercised pursuant to a resolution of the [r]edevelopment [a]uthority and the procedure set forth in the . . . 'Eminent Domain Code,' as amended."

declarations of taking, we cited Sections 205(e)[14] and 302(e) of the Eminent Domain Code and observed that "[t]here is nothing in either section . . . giving RACA authority to extend the one year time period by adopting another resolution 'continuing' the authority to condemn." *Ribbon Works*, 31 A.3d at 323.

*Ribbon Works* differs from the case now before the Court, because the resolution authorizing the use of eminent domain to acquire the subject property in *Ribbon Works* had already expired at the time the declaration of taking was filed. *Ribbon Works*, therefore, stands for the proposition that once an authorization for the use of eminent domain expires (*i.e.*, more than a year passes from the date of the resolution authorizing the taking), a condemnor cannot revive or extend the expired authorization. Thus, in *Ribbon Works*, RACA's December 3, 2008 authorization, purporting to continue its already expired authorization, was ineffective. As a result, the amended declaration of taking that RACA filed based on the ineffective December 3, 2008 authorization was also ineffective. In other words, Section 302(e) of the Eminent Domain Code acted as a bar to any declaration of taking purportedly authorized by RACA's June 14, 2005 resolution, because that authorization expired on June 14, 2006, and could not be revived.

In the case now before the Court, however, PennDOT did not wait more than one year after PennDOT's Secretary authorized its 2013 Plan before it acted. Rather, because PennDOT decided to make revisions to the 2013 Plan, PennDOT's Secretary authorized a new plan on February 27, 2014—the 2014 Plan. The 2014 Plan was essentially a "new" plan that consisted of the equivalent

---

[14] 26 Pa. C.S. § 205(e). Section 205(e) of the Eminent Domain Code provides that "[t]he declaration of a blighted area shall expire after 20 years."

of the 2013 Plan with revisions. Thus, Row-Row, at that time, was aware that PennDOT still intended to move forward with its proposed project and its acquisition of Row-Row's property as set forth in the 2014 Plan. PennDOT filed its declaration of taking within one-year of the authorization of the 2014 Plan. Nothing in the Administrative Code or the Eminent Domain Code prohibits PennDOT from starting the condemnation process over by its Secretary authorizing a revised plan or the original plan again. Once a revised plan is authorized or an old plan reauthorized, the process starts anew.

To the extent that our decision in *Ribbon Works* may be interpreted as holding that the failure of a condemnor to file a declaration of taking within one year of an action authorizing the taking bars the condemnor from condemning the property in the future, it is overruled. At most, because Section 302(e) of the Eminent Domain Code is not a statute of limitations and is directory in nature, the failure to file a declaration of taking within the one-year time period results in the original declaration lapsing as to any properties for which the condemnor has not yet filed a declaration of taking *if* the condemnee preliminarily objects to the taking on this basis. In the face of an objection on the basis of the untimeliness of the declaration of taking, the condemnor must begin the process anew (*i.e.*, reauthorize its previous plan or revised plan or pass a new resolution, etc.) in order to condemn the property in question. This is because the "failure to strictly adhere to the requirements of a directory statute will not nullify the validity of the action involved," *JPay*, 89 A.3d at 763, and the failure to follow a directory statute "will render such proceedings voidable under only certain circumstances," *Womack*, 83 A.3d at 1142-43.

17

For the reasons set forth above, we conclude that the trial court erred in concluding that PennDOT's declaration of taking was untimely filed under Section 302(e) of the Eminent Domain Code, and, therefore, we reverse the trial court's order.[15]

---

P. KEVIN BROBSON, Judge

Judge McCullough dissents.

---

[15] We note that the Joint State Government Commission's (JSGC) 1964 comment to Section 302 of the former Eminent Domain Code provides that "[i]f the condemnor does not file a declaration of taking, the condemnee may proceed under Section 502(e)" of the former Eminent Domain Code. In making that comment, however, the JSGC referenced circumstances where an injury occurs in the absence of a taking, such as a change of grade. It is unclear whether the JSGC intended that comment to apply to situations where an agency failed to file a declaration of taking within the one-year time period set forth in Section 302(e) of the current Eminent Domain Code. Also, we note that it appears that Section 502(e) of the former Eminent Domain Code was codified as Section 502(c) of the current Eminent Domain Code, 26 Pa. C.S. § 502(c), relating to condemnation where no declaration of taking has been filed. That section provides, in part, that "[a]n owner of a property interest who asserts that the owner's property interest has been condemned without the filing of a declaration of taking may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) setting forth the factual basis of the petition." It does not appear that the courts have considered whether that provision could be used to force the appointment of a board of viewers where a condemnor has been authorized to take property but has failed to file a timely declaration of taking.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by the     :
Commonwealth of Pennsylvania,     :
Department of Transportation, of     :
Right-of-Way for State Route 0095,     :
Section BSR, in the City of Philadelphia :
    :
Appeal of: Commonwealth of     :    No. 1308 C.D. 2014
Pennsylvania, Department of     :
Transportation     :

# **O R D E R**

AND NOW, this 29th day of January, 2016, the order of the Court of Common Pleas of Philadelphia County is hereby REVERSED.

---
P. KEVIN BROBSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by the             :
Commonwealth of Pennsylvania,          :
Department of Transportation, of       :
Right-of-Way for State Route 0095,     :
Section BSR, in the City of            :
Philadelphia                           :
                                       :   No. 1308 C.D. 2014
Appeal of: Commonwealth of             :   Argued: October 7, 2015
Pennsylvania, Department of            :
Transportation                         :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
          HONORABLE MARY HANNAH LEAVITT, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge

DISSENTING OPINION
BY JUDGE LEAVITT                                    FILED: January 29, 2016


          I respectfully dissent. Unlike the majority, I would affirm the order of

the trial court and hold that PennDOT's declaration of taking was untimely filed

under Section 302(e) of the Eminent Domain Code, 26 Pa. C.S. §302(e).[1] This

result is compelled by this Court's decision in *In re Redevelopment Authority of

City of Allentown* (*Ribbon Works*), 31 A.3d 321 (Pa. Cmwlth. 2011), which is not

factually distinguishable and which the Court should not overrule, in part or in

whole.

---

[1] Section 302(e) states: "The condemnor shall file within one year of the action authorizing the declaration of taking a declaration of taking covering all properties included in the authorization not otherwise acquired by the condemnor within this time." 26 Pa. C.S. §302(e).

To begin, I disagree with the majority's conclusion that *Ribbon Works* is factually distinguishable. In *Ribbon Works*, the redevelopment authority issued a "reauthorization" more than one year after its authorization to condemn and after it filed its declaration of taking. *Ribbon Works* overruled this so-called "reauthorization" and held that

> [t]here is nothing [in Section 302(e)] giving [the Redevelopment Authority] authority to extend the one year time period by adopting another resolution "continuing" the authority to condemn.

*Ribbon Works*, 31 A.3d at 323. The *Ribbon Works* ban on "adopting another resolution" to extend the one-year deadline for filing a declaration of taking does not provide an exception where the second resolution is done before expiration of the one-year time period. Simply, *Ribbon Works* established that the Secretary's "reauthorization" constituted an invalid attempt to skirt the directive in Section 302(e) that the "condemnor shall file within one year of the action authorizing the declaration of taking a declaration of taking ...." 26 Pa. C.S. §302(e).

Likewise, I disagree with the majority's conclusion that the mandate in Section 302(e) is directory and not mandatory. "[T]he difference between a mandatory and directory provision is the consequence for noncompliance: a failure to strictly adhere to the requirements of a directory statute will not nullify the validity of the action involved." *JPay, Inc. v. Department of Corrections*, 89 A.3d 756, 763 (Pa. Cmwlth. 2014). In other words, a directory statute is one that does not require strict compliance. The Eminent Domain Code, however, is strictly construed. *In re Condemnation by the School District of Pittsburgh*, 244 A.2d 42, 44 (Pa. 1968); *In re Condemnation of 110 Washington St., Borough of Conshohocken*, 767 A.2d 1154, 1159 (Pa. Cmwlth. 2001); *In re Condemnation by*

MHL-2

*Township of Heidelberg (Speicher Condemnation Appeal)*, 428 A.2d 282, 285 (Pa. Cmwlth. 1981). A strict construction of Section 302(e) requires that the one-year deadline be construed as a mandatory provision.

Finally, I disagree with the majority's adoption of PennDOT's public policy argument that Section 302(e) erects insurmountable administrative hurdles to its projects.[2] Section 302(e) applies to every condemnor, whether a private utility or a government agency, in the exercise of the power of eminent domain. The countervailing public policy argument is more persuasive, *i.e.*, that condemnors should not be allowed to place private property owners in eminent domain limbo by repeatedly reauthorizing plans of acquisition.

Eminent domain limbo is anathema to the real estate market. As one commentator has astutely explained:

> [B]efore ponderous bureaucratic machinery can translate public project planning into land acquisition, time passes. During that time[,] notice that a taking is imminent becomes widespread, which in turn promotes a wholesale departure of tenants, reluctance on the part of owners in the affected area to invest in improvements and maintenance, and distortion of the real estate market. Obviously, few people are willing to buy or lease property which will be taken from them in the foreseeable future. Such reluctance cuts across the potential market. At one extreme, families are apprehensive about making their home in dwellings from which they will be displaced at a time not of their own choosing, perhaps requiring a mid-term school transfer for their children. At the other end of the potential market, businessmen are even more reluctant to move into an area slated for a taking, and rightly so. What businessman in his right mind would buy or lease under such circumstances? Why should he remodel, install trade fixtures, buy stock-in-

---

[2] If PennDOT believes that its projects require a different provision in the Eminent Domain Code, this should be addressed to the legislature.

trade, and develop goodwill for his business, only to have it all confiscated when the threatened condemnation comes?

Market activity within the affected area decreases, and such sales of real property as do occur are disproportionately composed of distress sales (i.e., sales compelled by death, divorce, job transfers, economic reverses, and other factors tending to depress sales prices). The buyers of such properties understandably pay less than actual market value. Since the affected area is "on borrowed time," economic activity within it—such as it is—tends to become dominated by persons who are able and willing to devote real property to short-term uses. Often, there are not enough such people to utilize existing improvements, with the result that vacancies increase, thereby encouraging vandalism and causing business to decline. These events in turn provide the remaining inhabitants of the area with additional incentive to relocate. In some instances such events combine to form a vicious cycle leading ultimately to abandonment of entire city blocks.

All of these problems become exacerbated with the passage of time.

Gideon Kanner, *Condemnation Blight: Just How Just is Just Compensation*, C730 ALI-ABA 219, 223-25 (ALI 1992) (footnotes omitted). The General Assembly established a strict one-year deadline in Section 302(e) of the Eminent Domain Code between the authorization for a declaration of taking and its actual filing, and it did so for sound policy reasons.

For these reasons, I would hold that *Ribbon Works* is controlling and affirm the decision of the trial court.

_____
MARY HANNAH LEAVITT, Judge