**ALDHELM, INC., Appellant**

v.

**SCHUYLKILL COUNTY TAX CLAIM BUREAU and Freeland Holding Company, Inc.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 13, 2005.

Decided July 20, 2005.

Michael A. O'Pake, Pottsville, for appellant.

Robert S. Frycklund, Pottsville, for appellee, Schuylkill County Tax Claim Bureau.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Aldhelm, Inc., the delinquent taxpayer, appeals from an order of the Court of Common Pleas of Schuylkill County (trial court) dismissing its objections to the sale of its property at an upset sale. The trial court did so because it found that the notice requirements under the Real Estate Tax Sale Law[1] had been satisfied notwithstanding the one-letter error in the spelling of the taxpayer's name in each notice of the impending sale.

The relevant facts are not in dispute. Aldhelm, Inc. was the owner of property identified as Tax Parcel No. 18–22–8, on Route SR–2001 in North Manheim Township. The county, township and school district returned taxes on this property as delinquent for tax year 2002 to the Schuylkill County Tax Claim Bureau (Bureau). On February 21, 2003, the Bureau sent a notice of the tax delinquency by certified mail to "Aldheim, Inc." at the address shown on the Bureau's records. On February 25, 2003, William J. Paulosky, who was identified in the Bureau records as the president of Aldhelm, Inc., signed the certified mail receipt.[2] A second certified mail notice was sent to "Aldheim, Inc.,"

the receipt for which was signed by Paulosky.

On May 19, 2004, the Bureau initiated an upset sale proceeding by sending a notice to Aldhelm, Inc., using the spelling "Aldheim, Inc.," that its property was scheduled for sale on September 13, 2004. The return receipt was, again, signed by Paulosky. On August 4, 2004, the notice of sale of the property, identified as belonging to "Aldheim, Inc.," was posted thereon. On August 12, 2004, the sale of the property owned by "Aldheim, Inc." was advertised in *The Pottsville Republican*, *The Call*, *The Press*, *The West Schuylkill Herald* and *The Schuylkill Legal Record*. On August 16, 2004, by first class mail, the Bureau sent a notice addressed to "Aldheim, Inc." of the scheduled sale.[3]

When the Bureau received a copy of the deed, it learned that the correct spelling of the name of the corporation was "Aldhelm" not "Aldheim." It then determined that the Bureau had been using this spelling since 1993 in all its communications with the taxpayer. However, no one at Aldhelm, Inc. had ever alerted the Bureau to this spelling error or lodged an objection that it was being sent the taxes owed by another corporation.

On November 5, 2005, Aldhelm, Inc. filed an objection to the upset sale, alleging generally that the Bureau failed to provide it with notice of the sale.[4] At the hearing on these objections, the Bureau presented its evidence to support its position that it had complied with the Real

1. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101–5860.803.

2. The Director of the Bureau, Susan Graver Koch testified that she had verified that Mr. Paulosky was the president of Aldhelm, Inc. with the Department of Corporations.

3. This additional notice was not required by the Real Estate Tax Sale Law.

4. On October 8, 2004, the Bureau notified "Aldheim, Inc." by certified mail, which Paulosky signed on October 16, 2004, that its property had been sold.

Estate Tax Sale Law. In response, the taxpayer presented evidence, through its corporate secretary, who was also a shareholder, that the correct spelling of the corporation was "Aldhelm, Inc." not "Aldheim, Inc." This witness identified Paulosky as another shareholder. The trial court determined that the Bureau had complied with all the notice requirements of the Real Estate Tax Sale Law and that the misspelling of the name of the owner of the property did not vitiate that compliance.

■ On appeal to this court,[5] Aldhelm, Inc. raises three issues, which have been reordered for purposes of our analysis. They are as follows: (1) in light of the misspelling of "Aldhelm," the trial court erred in concluding that the Bureau had complied with the newspaper publication requirements of the Real Estate Tax Sale Law; (2) the trial court's factual finding that Aldhelm, Inc. had actual notice of the upset sale is not supported by competent evidence; and (3) the trial court erred by not considering the prejudice to Aldhelm, Inc. that resulted from the sale of its property.

■ The purpose of the Real Estate Tax Sale Law is to ensure the collection of taxes, not to deprive citizens of their property. *Stanford–Gale v. Tax Claim Bureau of Susquehanna County*, 816 A.2d 1214, 1216 (Pa.Cmwlth.2003). Thus, a failure by a tax claim bureau to comply with all the statutory notice requirements ordinarily nullifies a sale. However, we have waived strict compliance with the statutory requirements where it has been demonstrated that the record owner has received actual notice of the impending sale. *Sabbeth v. Tax Claim Bureau of Fulton County*, 714 A.2d 514, 517 (Pa.Cmwlth.1998).

With these principles in mind, we address, first, Aldhelm, Inc.'s argument that the Bureau failed to comply with the advertising requirements in the Real Estate Tax Sale Law. Section 602(a) of the Real Estate Tax Sale Law establishes detailed requirements for advertising; it states:

(a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. *Such notice shall set forth* (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and *the name of the owner.*

72 P.S. § 5860.602(a) (emphasis added). Aldhelm, Inc. does not challenge any of these requirements, save one. It argues that the newspaper notices did not "set forth ... the name of the owner." *Id.*

Aldhelm, Inc. contends that our holding in *Hicks v. Och*, 17 Pa.Cmwlth. 190, 331 A.2d 219 (1975) supports its claim that the Bureau's newspaper publications must be voided because they identified the wrong owner. In *Hicks*, we set aside a sale that had been published in newspapers using the name of the former owners, rather than the current owner.[6] *Hicks* is obvi-

---

5. Our review is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision unsupported by the evidence. *In the Matter of Tax Sale of 2003 Upset*, 860 A.2d 1184, 1187 n. 2 (Pa.Cmwlth.2004).

6. In *Hicks*, the taxpayers also asserted that the tax claim bureau failed to notify each owner by registered mail and that the posting of the property had not been done. We did not reach the additional issues because we found the newspaper publications invalid.

ously distinguishable. Here, the Bureau did not use the name of the former owner of the property subject to the tax sale;[7] rather, it made a one-letter error in the spelling of the current owner.

Directly relevant here is our holding in *In re Property of Moskowitz*, 68 Pa. Cmwlth. 29, 447 A.2d 1114 (Pa.Cmwlth. 1982). In that case, the tax claim bureau had advertised the impending sale of property belonging to Mr. and Mrs. Moskowitz. In five out of seven newspaper publications, "Moskowitz" was misspelled as "Moskowita." We affirmed the trial court's holding that under the doctrine of *idem sonans*,[8] the validity of the tax claim bureau's newspaper publications was not affected by misspelling "Moskowitz."

The doctrine of *idem sonans*, rarely invoked in Pennsylvania jurisprudence, was thoroughly reviewed and explained by the trial court in *In re Property of Moskowitz*, 31 Pa. D & C 3d 623 (1981). Simply, the doctrine holds the validity of a legal document is not affected by a misspelling where "although spelled differently, the attentive ear finds difficulty in distinguishing the two names when pronounced." *Id.* at 628, n. 4 (citation omitted). Some courts have applied the principle of *idem*

*sonans* "where the duty devolves upon the eye, instead of the ear, to distinguish the names." *Id.* (citation omitted).[9] The doctrine has been extended to clerical errors other than those involving exact sound-alike homonyms or look-alike words. So long as the misspelling is adequate to identify the person whose name is in question and does not cause a litigant prejudice, the doctrine of *idem sonans* will be applied to uphold the validity of a legal document that contains a misspelled name. *Id.* Accordingly, "Crittenden & Smith" will suffice for "Crittenden Smith" in a tax sale notice, and "E.M. Berthre" will suffice for "E.M. Bertha" in a confessed judgment. *Id.* at 629.[10]

■ This Court agreed with the trial court's disquisition on, and application of, the doctrine of *idem sonans*. We summarized the doctrine as follows:

> We agree that absolute accuracy in spelling of names in notices published pursuant to Section 602 is not required when (1) the name, as misspelled, is essentially the same as the name correctly spelled, (2) the misspelled name adequately identifies the owner and (3)

7. The former owner of the property was the Brokhoff Dairy, which cannot be confused with "Hicks." Reproduced Record at 68a (R.R. ——).

8. "Sounding the same or alike." The term applies to names which are substantially the same, though slightly varied in the spelling, as "Lawrence" and "Lawrance." BLACK'S LAW DICTIONARY, 744 (6th ed. 1990).

9. Indeed, it must be conceded that "Moskowita" sounds different from "Moskowitz;" however, they appear nearly identical.

10. *See also State v. Wilson*, 135 N.C.App. 504, 521 S.E.2d 263 (1999) (name in criminal indictment sufficient under the doctrine of *idem sonans* where defendant not prejudiced by the

misspelling); *Reyes v. State* 3 S.W.3d 623, 626 (Tex.App.-Houston [1 Dist.] 1999) (evidence is sufficient if the defendant was not surprised or prejudiced by the variance); *Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991)(a variance in the spelling of a name is not fatal in cases where the inaccuracy is not misleading); *Orr v. Byers*, 198 Cal.App.3d 666, 244 Cal.Rptr. 13 (1988) (absolute accuracy in spelling names is where a variance must be such as has misled the opposite party to his prejudice.); *Cox v. Cox*, 490 So.2d 1051, 1052 (Fla.Dist.Ct.App.1986) (a minor misspelling is not a sufficient basis for invalidating notice unless prejudice is shown); *Corporate Financers v. Voyageur Trading Co.*, 519 N.W.2d 238, 243 (Minn.Ct.App.1994) (absent showing of prejudice from a misspelling, *idem sonans* prevails).

the party is not prejudiced by the misspelling.

*In re Moskowitz*, 447 A.2d at 1115 (footnote and citations omitted).

Aldhelm, Inc. argues that the application of the doctrine of *idem sonans* is limited to the facts in *In re Moskowitz*, where at least two of the published newspaper notices correctly spelled the name "Moskowitz." This is not persuasive. Our application of the doctrine was not conditioned on the fact that two of the seven publications accurately spelled the name in question. We did not so state that condition, and to accept such a limited understanding of *In re Property of Moskowitz* would make the doctrine of *idem sonans* meaningless.

■ Accordingly, we apply here the doctrine of *idem sonans*, as summarized by this Court in *In re Property of Moskowitz*. "Aldhelm" and "Aldheim" sound and look alike. The Bureau's use of "Aldheim, Inc." was adequate to identify "Aldhelm, Inc." because since 1993 the taxpayer accepted tax notices using that spelling and made tax payments pursuant to them without complaint.[11] The misspelling of "Aldhelm" as "Aldheim," which caused no one to be misled as to in any way relevant to the purpose of the newspaper publication of the upset sale; accordingly, the identification of the property owner in the newspapers as "Aldheim, Inc." satisfied Section 602(a) of the Real Estate Tax Sale Law. We will not allow Aldhelm, Inc. to exploit a typographical error even it chose to overlook for many years.[12]

Next, we consider Aldhelm, Inc.'s argument that it did not receive direct notice of the sale. Section 602(e)(1) of the Real Estate Tax Sale Law provides as follows:

(e) In addition to such publications, *similar notice of the sale* shall also be given by the Bureau as follows:

(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, *to each owner*[13] as defined by this act.

72 P.S. § 5860.602(e)(1) (emphasis added). Aldhelm, Inc. contends that Section 602(e)(1) was not satisfied because the Bureau gave notice to another entity, not to it. Aldhelm, Inc. further argues that because the Bureau failed to prove the genuineness of Paulosky's signature, and, thus, the trial court's finding that Aldhelm, Inc. received actual notice is not supported by competent evidence. There are several flaws in Aldhelm, Inc.'s argument.

First, just as the doctrine of *idem sonans* prevents the misspelling of "Al-

11. Never, for example, did an agent of Aldhelm, Inc. reject a Bureau mailing for the reason that the addressee, *"Aldheim, Inc.,"* was unknown.

12. Aldhelm, Inc. does not claim that it read the newspaper notices and was misled into believing that it was some other person's property that was the subject of the sale. It does not claim that the description of the property, as required in Section 602(a), was deficient.

13. Section 102 of the Real Estate Tax Sale Law defines "owner" as,

the person in whose name the property is last registered, if registered according to law, or,

if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property; as to property having been turned over to the bureau under Article VII by any county, "owner" shall mean the county.

72 P.S. § 5860.102 (emphasis added).

dhelm" as "Aldheim" from being fatal to the Bureau's newspaper publications of the impending tax sale, it similarly protects the validity of the Bureau's certified mail notices. At issue in *In re Property of Moskowitz* were published notices required under Section 602 of the Real Estate Tax Sale Law. However, there is no principled reason not to apply the doctrine of *idem sonans* to every other notice required in Section 602.[14] Because notices sent under Section 602(e)(1) are to be "similar" to the published notices, it follows that if a notice is appropriate for the publication required by Section 602(a), then it will suffice for the certified mailing required by Section 602(e)(1). Accordingly, under *idem sonans*, the use of "Aldheim" in the certified mail notice satisfied the notice requirement of Section 602(e)(1) of the Real Estate Tax Sale Law.

■ Second, even if the notice mailed to "Aldheim, Inc." were found not to comply with Section 602(e)(1) of the Real Estate Tax Sale Law, it is at most a technical defect. Where a record owner has received actual notice of the impending sale, strict compliance with Section 602 will be

waived. *Sabbeth,* 714 A.2d at 517. The trial court found that Aldhelm, Inc. had actual notice because the corporation's president[15] signed each certified mail receipt. We agree that actual notice was demonstrated.

■ It was not disputed that each certified mailed notice of the property's tax sale was returned to the Bureau signed by Paulosky, the president of Aldhelm, Inc. The trial courts finding of actual notice was based upon the copies of each receipt entered into evidence by the Bureau. Contrary to Aldhelm, Inc.'s contention, the Bureau was not required to prove the genuineness of Paulosky's signature. A signature is not to be presumed fraudulent until proven otherwise. To the contrary, "[w]here no evidence is presented to dispute the authenticity of a signature, it will be presumed genuine." *In re Nomination Petition of Cooper,* 163 Pa.Cmwlth. 430, 643 A.2d 717, 725 (1994) (citation omitted).[16] What weight to assign evidence is a matter for the trier of fact to resolve, and it cannot be disturbed on appeal when supported by substantial evidence of rec-

14. Implicitly, this Court has applied the doctrine to certified mail notices required under Section 602(e)(1). In *Appeal of Pinto,* 72 Pa. Cmwlth. 218, 455 A.2d 1294 (1983), we refused to set aside a tax sale even though notices were sent to "Mr. & Mrs. Ronald S. Pinte" instead of "Mr. and Mrs. Ronald S. Pinto" and were, then, not forwarded to their new address. We concluded that the harm was of the taxpayers' own making because the taxpayers had failed to notify the claim bureau of their new address.

15. A corporation is a creature of legal fiction that can only act through its officers, directors or other agents. *Ashley v. Ashley,* 482 Pa. 228, 393 A.2d 637 (1978). Accordingly, in the case of a tax sale notice, an officer, director or another authorized agent must accept mail on behalf of the corporation. *See Perma Coal–Sales, Inc. v. Cambria County Tax Claim Bureau,* 162 Pa.Cmwlth. 7, 638 A.2d

329, 331–332 (1994). Where the question of agency depends upon a written instrument, it is a question of law to be determined by the court. Where the authority is to be implied from the conduct of the parties, or where the agency is to be established by witnesses, the fact of agency and scope of the agency is for the trier of facts. *Gillian v. Consolidated Foods Corp.,* 424 Pa. 407, 411, 227 A.2d 858, 861 (1967).

16. Had Aldhelm, Inc. actually believed that the signatures on the certified mail receipts were not those of William J. Paulosky, it was required to raise fraud in its objections filed with the trial court. The Pennsylvania Rules of Civil Procedure require that fraud be averred with particularity. Pa. R.C.P. No. 1019(b). No such claims were ever raised by Aldhelm, Inc. in its pleadings or at the hearing.

ord. *Consolidated Return by McKean County Tax Claim Bureau of 9/12/2000,* 820 A.2d 900, 903 (Pa.Cmwlth.2003). The trial court's finding of actual notice was supported by substantial evidence of record, namely the certified mail receipts signed by the taxpayers' president. As such, it may not be disturbed on appeal.[17]

Aldhelm, Inc.'s real argument seems to be that for purposes of waiving a technical defect, the Bureau was required to show that it had actual knowledge of the sale, as opposed to actual notice. The *Sabbeth* waiver doctrine is not so limited; indeed, we held in that case that actual notice can be implied. In *Sabbeth,* the taxpayer received the certified mail notice of the sale of her property at work; another employee signed the receipt and placed the notice on the taxpayer's desk. However, the taxpayer failed to open this mailing until the day of the sale. We refused to allow the taxpayer to exploit this fact, holding that she had implied actual notice. Stated otherwise, actual notice, for purposes of the *Sabbeth* waiver doctrine, should not be equated with actual knowledge.

In sum, we hold that the certified notices sent by the Bureau to the record owner satisfied Section 602(e)(1) of the Real Estate Tax Sale Law. Under the doctrine of *idem sonans,* the Bureau satisfied its obligations under Section 602(e)(i) because "Aldheim" was adequate to designate "Aldhelm" and the use of an "i" instead of an "l" did not prejudice the taxpayer. In addition, we hold that the certified mailed notices, even if defective, waived strict compliance with Section 602(e)(1) because they were signed for and returned to the Bureau,[18] which are evidence of actual notice.

Finally, Aldhelm, Inc. contends that the trial court overlooked the clear prejudice to it. It contends that the public was likely to be confused by the improper spelling of its name in the newspaper publications. Further, it was prejudiced because it has been deprived of its property without due process. This argument misses the mark; every tax sale completed without approval of the record owner can be said to be prejudicial to the record owner. The point relevant to the doctrine of *idem sonans,* is whether the Bureau's *misspelling* of the taxpayer's name as "Aldheim" caused it prejudice. Aldhelm, Inc. presented no such evidence, and *In re Property of Moskowitz* clearly requires more than an after-the-fact statement of dissatisfaction to demonstrate prejudice. With no factual support for its contention, we can find no error by the trial court.

**17.** Aldhelm, Inc. also contends the trial court's finding that the president of the company recognized that the spelling "Aldheim" was a permissible variation of the correct spelling is unsupported by evidence of record. It also contends that the trial court's finding that Aldhelm's president accepted the fact Aldheim is the same as Aldhelm is unsupported by the factual record. We note however that the Director of the Bureau testified that the error was first detected in the records of the Assessment Bureau prior to 1993 as a "typo ... when the property first became delinquent," that the spelling of the corporation has always been Aldheim for the Bureau and that no one advised the Bureau of any error. R.R. 56a. As such, the finding of the trial court that the president of the corporation accepted the misspelling as a permissible variation is supported by evidence of record.

**18.** A taxing bureau has duty to ascertain the identity and the whereabouts of the record owner of a property subject to a tax sale. This duty is confined to using ordinary common sense business practices to ascertain the owners and their addresses. *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137, 1142–1143 (Pa.Cmwlth.1997). Only where notice does not obviously effectively reach the owners of record, must a tax claim bureau take additional steps to find the delinquent taxpayer. *Id.*

Accordingly, the decision of the trial court is affirmed.

## ORDER

AND NOW, this 20th day of July, 2005, the order of the Court of Common Pleas of Schuylkill County dated December 10, 2004, in the above-captioned matter is hereby affirmed.

Judge PELLEGRINI concurs in the result only.