IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rausch Creek Coal Preparation     :
Lykens, LLC,     :
              Appellant     :
    :
        v.     :
    :
Schuylkill County Tax Claim     :    No. 265 C.D. 2023
Bureau and Michael Workman, Jr.     :    Submitted: August 9, 2024


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: September 25, 2024

Rausch Creek Coal Preparation Lykens, LLC (Rausch Creek) appeals from the Schuylkill County (County) Common Pleas Court's (trial court) February 16, 2023 order denying its Objections to Set Aside Tax Claim Sale (Objections). Rausch Creek presents three issues for this Court's review: (1) whether the trial court erred by determining that the Schuylkill County Tax Claim Bureau (Bureau) strictly complied with all notice requirements under the Real Estate Tax Sale Law (RETSL)[1] when the Bureau consistently misspelled Rausch Creek's name; (2) whether the trial court erred by determining that the Bureau complied with the RETSL when the returned signature card was not signed by Rausch Creek or a representative thereof, and was merely marked delivered by the post office; and (3) whether the trial court erred by finding that Rausch Creek's partial payments of real estate taxes did not qualify as an installment agreement. After review, this Court affirms.

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

Rausch Creek purchased 4.4 acres of land located at Trail Slope Road in Tremont Township (Property) from Scott Kimmel, Administrator of the Estate of Leslie R. Kimmel (Kimmel), deceased (Estate), on September 25, 2020. *See* Reproduced Record (R.R.) at 100a-103a (Deed). At the time of the purchase, the Bureau had already sent the entry of claim to Kimmel and the Bureau had received the returned signature card. *See* R.R. at 98a. The 2019 delinquent taxes were not paid by the Estate. The Bureau mailed a 2020 entry of claim for the 2019 taxes to "**Rauch** Creek Coal Preparation Lykens, LLC" and the returned signature card was marked signed by "D. Fog**ar**ty" on April 15, 2021.[2] R.R. at 95a (emphasis added). Rausch Creek's financial controller, Kevin Michael Shoffler (Shoffler), testified that D. Fog**er**ty is Rausch Creek's office manager and controller of its home office located at 978 Gap Street in Valley View, Pennsylvania.[3] *See* R.R. at 48a. On June 2, 2021, the Bureau sent the Upset Sale Notice to "**Rauch** Creek Coal Preparation Lykens, LLC" and the returned signature card was marked signed by "D. Fogarty" on June 2, 2021. R.R. at 92a. (emphasis added). On September 27, 2021, the Property was exposed at an upset sale (Upset Sale), and Michael Workman, Jr. (Workman) purchased it for $5,162.00. *See* R.R. at 63a.

On October 26, 2021, the Bureau sent the upset sale notice (Notice of Sale) via certified mail restricted delivery to "**Rauch** Creek Coal Preparation Lykens, LLC" at 978 Gap Street, Valley View, Pennsylvania. R.R. at 69a (Notice of Sale) (emphasis added). The returned signature card was marked signed by "D.

---

[2] Rausch Creek's financial controller, Kevin Michael Shoffler, testified that D. Fogerty is Rausch Creek's office manager and controller of its home office located at 978 Gap Street in Valley View, Pennsylvania. *See* R.R. at 48a.

[3] Although the correct spelling of Rausch Creek's office manager and controller of its home office is Fog**er**ty, the United States Postal Service carrier wrote "D. Fog**ar**ty" on the return receipt card. R.R. at 92a (emphasis added). The reasons therefor are explained below. The trial court relied on the return receipt card, and the spelling contained therein.

2

Fogarty" on October 29, 2021. R.R. at 72a. On December 10, 2021, Rausch Creek timely filed the Objections. The trial court held a hearing on December 21, 2021. On February 16, 2023, the trial court denied the Objections. Rausch Creek appealed to this Court.[4]

> Initially,
>
> the [RETSL] was intended to assist in the collection of taxes, not to deprive delinquent taxpayers of their property or to create investment opportunities for members of the public. . . . [B]ecause due process is implicated in the government's involuntary sale of a citizen's real property, the [Bureau] bears the burden of proving strict compliance with each and every notice provision in the [RETSL].

*In re Lehigh Cnty. Tax Claim Bureau Upset Tax Sale of Sept. 19, 2018*, 263 A.3d 714, 718 (Pa. Cmwlth. 2021) (citation omitted).

Rausch Creek first argues that the trial court erred by determining that the Bureau strictly complied with all notice requirements under the RETSL when the Bureau consistently misspelled Rausch Creek's name. Specifically, Rausch Creek contends that because the Bureau spelled "Rausch" as "Rauch" in all of its notices, the Bureau did not strictly comply with the RETSL. Rausch Creek cites *In Re: Tax Claim Bureau of Lehigh County v. Curtis Building Co., Inc.*, 381 A.2d 511 (Pa. Cmwlth. 1978) (*Lehigh County*), to support its position.[5]

In *Lehigh County*, during the period in which the tax claim bureau (bureau) sent its notices, Robart Company (Robart) owned the property in question, but Bobart Company (Bobart) tenanted the property. The lower court found that the

---

[4] "[This Court's] review in tax sale cases is limited to determining whether the trial court abused its discretion, erred as a matter of law, or rendered a decision not supported by substantial evidence." *In re Balaji Invs., LLC*, 148 A.3d 507, 509 n.2 (Pa. Cmwlth. 2016).

[5] By December 11, 2023 Order, this Court precluded the Bureau and Workman from filing briefs because they failed to file briefs pursuant to this Court's October 18, 2023 Order.

bureau sent the notice of claim to Robart but Bobart received it, as shown by the return receipt. Furthermore, the lower court found that the bureau sent the notice of sale to Bobart, rather than Robart. Finding that the notice provisions of the RETSL had not been strictly complied with, the lower court held that the upset sale could not be confirmed.

This Court affirmed the lower court's order, concluding:

> After a careful examination of the record, we find ample evidence to support the decision of the [lower] court []. Although evidence was introduced that supported a finding that notice had been correctly sent to [R]obart, there was also much evidence to the contrary. For example, the return receipt received by the [b]ureau was signed by Bobart. Moreover, a post office official testified that the best evidence of to whom the notice was sent is [United States Postal Service (USPS)] Form 3849 [(Form)], which is filled out by a mailman when he delivers a certified or registered letter. This [F]orm indicated that notice had been addressed to Bobart, not Robart. There was also evidence that official records of the [b]ureau had been tampered with, leaving certain of its testimony as to its usual procedures suspect.

*Lehigh County*, 381 A.2d at 513. Here, although Rausch Creek's name was misspelled, the Bureau sent the notice to Rauch Creek at Rausch Creek's address, and Rausch Creek received it, as evidenced by the returned signature card indicating D. Fogarty's receipt. Thus, *Lehigh County* is inapposite.

This case is more aligned with *Aldhelm, Inc. v. Schuylkill County Tax Claim Bureau*, 879 A.2d 400 (Pa. Cmwlth. 2005). Therein, Aldhelm, Inc. owned the property at issue. The county, township, and school district reported to the bureau that the property's 2002 taxes were delinquent. On February 21, 2003, the bureau sent a notice of the tax delinquency by certified mail to **Aldheim**, Inc. at the address shown on the bureau's records. On February 25, 2003, Aldhelm, Inc.'s President, William J. Paulosky (Paulosky), signed the certified mail receipt. A

4

second certified mail notice was sent to **Aldheim**, Inc., the certified mail receipt therefor Paulosky also signed.  On May 19, 2004, the bureau initiated an upset sale proceeding by sending a notice to **Aldheim**, Inc., that its property was scheduled for sale on September 13, 2004.  Paulosky also signed that certified mail receipt.  On August 4, 2004, the notice of sale of the property, identified as belonging to **Aldheim**, Inc., was posted thereon.  On August 12, 2004, the sale of the property was advertised in *The Pottsville Republican*, *The Call*, *The Press*, *The West Schuylkill Herald*, and *The Schuylkill Legal Record* as owned by **Aldheim**, Inc.  On August 16, 2004, by First-Class Mail, the bureau sent a notice addressed to **Aldheim**, Inc. of the scheduled sale.[6]  The lower court determined that the bureau had complied with all of the RETSL's notice requirements, and that the misspelling of the property owner's name did not vitiate that compliance.

> This Court affirmed the lower court's order reasoning:

> [W]e apply here the doctrine of *idem sonans*, as summarized by this Court in *In re Property of Moskowitz*[, 447 A.2d 1114 (Pa. Cmwlth. 1982)].[7]  "Aldhelm" and "Aldheim" sound and look alike.  The bureau's use of "Aldheim, Inc." was adequate to identify "Aldhelm, Inc." because since 1993 the taxpayer accepted tax notices using that spelling and made tax payments pursuant to them

---

[6] When the bureau received a copy of the deed, it learned that the correct spelling of the name of the corporation was Aldhelm rather than Aldheim.  It then determined that it had been using this spelling since 1993 in all of its communications with the owner.  However, no one at Aldhelm, Inc. had ever alerted the bureau to this spelling error or lodged an objection that it was being notified of taxes owed by another corporation.

[7] The *Aldhelm, Inc.* Court summarized the doctrine of *idem sonans*:

> We agree that absolute accuracy in spelling of names in notices published pursuant to Section 602 [of the RETSL] is not required when (1) the name, as misspelled, is essentially the same as the name correctly spelled, (2) the misspelled name adequately identifies the owner[,] and (3) the party is not prejudiced by the misspelling.

*Aldhelm, Inc.*, 879 A.2d at 404-05 (quoting *In re Moskowitz*, 447 A.2d at 1115 (footnote and citations omitted)).

> without complaint. The misspelling of "Aldhelm" as "Aldheim," which caused no one to be misled as to in any way relevant to the purpose of the newspaper publication of the upset sale; accordingly, the identification of the property owner in the newspapers as "Aldheim, Inc." satisfied Section 602(a) of the [RETSL, 72 P.S. § 5860.602(a) (relating to notice publication)]. We will not allow Aldhelm, Inc. to exploit a typographical error even it chose to overlook for many years.

*Aldhelm, Inc.*, 879 A.2d at 405 (footnote omitted).

Similarly, here, the misspelling of Rausch Creek as **Rauch** Creek caused no one to be misled in any way relevant to the purpose of the required notices of the Upset Sale. Because the name, as misspelled, was essentially the same as the name correctly spelled, the misspelled name adequately identified the owner, and Rausch Creek was not prejudiced by the misspelling, as evidenced by D. Fogerty's receipt of the notices, the RETSL did not require absolute accuracy in the spelling of Rausch Creek's name in the mandated notices. *See Aldhelm, Inc.* This Court will not allow Rausch Creek to exploit a typographical error. Accordingly, the trial court properly determined that the Bureau strictly complied with all notice requirements under the RETSL.

Rausch Creek next argues that the trial court erred by determining that the Bureau complied with the RETSL when the returned signature card was not signed by Rausch Creek or a representative thereof and was merely marked delivered by the USPS. Specifically, Rausch Creek contends that due to the COVID-19 pandemic, any certified mailing cards were marked by the mail carrier. Further, Rausch Creek maintains that the trial court opined that Rausch Creek's office manager and controller of the home office at 978 Gap Street, D. Fogarty, signed for the certified mailing, but Shoffler testified that it did not appear to be D. Fogerty's signature. Rausch Creek claims that such a fact is significant with respect to the notice of sale and one that was incorrectly interpreted by the trial court.

6

At the outset, although the trial court opined, "[t]he return receipt [card] was signed by D. Fogarty on June 2, 2021[,]" it further noted that "during the [COVID-19] pandemic the postal service would require postal workers to notify on the return receipt [card] that the mail had been accepted by the signor of section 2.A." R.R. at 161a; Trial Ct. Op. at 3 & n.1.

The Bureau's clerk/typist, responsible for upset tax sale notices, Mark Motsko, testified:

> Q. And do you know if the [U]pset [S]ale [N]otice was in fact sent, if I direct you to page 31[, R.R. at 93a]?
>
> A. I apologize. My fingers aren't working. Page 31 would be the 2021 [U]pset [S]ale certified restricted delivery [] mailing list to owners.
>
> Q. Okay. And again how is that sent?
>
> A. All notices are sent by certified restricted [mail] to each owner that's listed in the records.
>
> Q. Now was there a receipt that came back verifying that the notice was in fact received?
>
> A. Page 30[, R.R. at 92a,] indicates the certified restricted card was returned to the Bureau from the [USPS] with a signature on it.
>
> Q. Okay. Now, that has marking that says -- appears COVID-19 with initials. Are you familiar with what -- what that is?
>
> A. Yes. At the time of the COVID[-19] pandemic the [USPS] required their [sic] carriers to notify anyone that they encountered that was an owner of the property that a certified mailing was in their hand for them and to initial it and sign it as such and leave it with the said person.[8]

---

[8] Specifically, to reduce health risks during the COVID-19 pandemic, the USPS temporarily directed:

Q. Okay. Now based on that receipt of the card with that notation, did the Bureau determine that the [U]pset [S]ale notice was properly served?

A. Yes. It is considered good service.

R.R. at 21a-22a. The USPS carrier wrote "D. Fogarty" on the return receipt card. R.R. at 92a. Accordingly, the trial court properly determined that D. Fogerty received the Upset Sale Notice.

Finally, Rausch Creek argues that the trial court erred by finding that Rausch Creek's partial payments of real estate taxes did not qualify as an installment agreement. Specifically, Rausch Creek contends that Shoffler provided unrefuted testimony that Rausch Creek paid county/local taxes for the Property earlier in 2021 - prior to the Upset Sale - and he also paid the school tax bill for the Property that year. Rausch Creek asserts that these payments occurred prior to the sale in September of 2021. Rausch Creek claims that, considering that it paid these taxes, such payments should have been considered partial payments entitling it to an installment agreement and postponing the September 2021 Upset Sale. Rausch Creek maintains that the Bureau's failure to expressly offer it an installment payment agreement constitutes a violation of the RETSL that invalidates the sale.

---

While maintaining a safe, appropriate distance, **employees will request the customer's first initial and last name so that the employee can enter the information on the electronic screen or hard copy items such as return receipts**, [US]PS Forms 3811 and 3829. For increased safety, employees will politely ask the customer to step back a safe distance or close the screen door/door so that they may leave the item in the mail receptacle or appropriate location by the customer['s] door.

https://about.usps.com/newsroom/service-alerts/pdf/march-23-safety-of-mail.pdf (emphasis added) (last visited Sept. 24, 2024).

Initially, "[a] long line of this Court's precedent holds that a taxing authority has a duty to notify a taxpayer of the availability of an installment payment plan under [S]ection 603 of the [RETSL, 72 P.S. § 5860.603,] only when the taxpayer pays at least 25% of the taxes due." *In Re Consolidated Return of Tax Claim Bureau of Indiana Cnty. from Sept. 16, 2019 Upset Sale for Delinquent Taxes*, 250 A.3d 508, 513 (Pa. Cmwlth. 2021). "[H]owever, our precedent makes abundantly clear that the Bureau had no such duty [here] because [Rausch Creek] did not pay at least **25% of the *delinquent* taxes** at issue." *Id*. at 515 (bold and italic emphasis added).

Shoffler's entire testimony concerning these payments consisted of the following:

> Q. In fact, you paid the 2022 taxes for that parcel this year?
>
> A. We've paid 2021 taxes and the 2022 taxes for that parcel, yes. And actually, for the other parcel as well.
>
> Q. How about the school taxes?
>
> THE [TRIAL] COURT: You mean the parcel in question on the deed [(i.e., the Property)]?
>
> THE WITNESS: Yes.
>
> THE [TRIAL] COURT: The one that we are here today on?
>
> THE WITNESS: Yes.
>
> THE [TRIAL] COURT: Okay.
>
> Q. So in other words, the bills that were issued **after** you purchased it were paid?
>
> A. Yes.

9

R.R. at 45a-46a (emphasis added). Because Rausch Creek did not pay 25% of the Property's **delinquent** taxes, the Bureau was not obligated to offer it an installment plan. Accordingly, the trial court properly determined that Rausch Creek's partial payments of real estate taxes did not qualify as an installment agreement.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rausch Creek Coal Preparation :
Lykens, LLC, :
               Appellant :
                                  :
               v. :
                                  :
Schuylkill County Tax Claim : No. 265 C.D. 2023
Bureau and Michael Workman, Jr. :

## O R D E R

AND NOW, this 25th day of September, 2024, the Schuylkill County Common Pleas Court's February 16, 2023 order is affirmed.

_____
ANNE E. COVEY, Judge