IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aleyda Maldonado Norberto,      :
          Appellant      :
                :
      v.       :   No. 315 C.D. 2024
                :
Schuylkill County Tax Claim Bureau  :   Submitted: October 7, 2025
and Marek Tchorzewski      :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MATTHEW S. WOLF, Judge

OPINION
BY JUDGE McCULLOUGH            FILED: December 3, 2025

      Aleyda Maldonado Norberto (Taxpayer) appeals from the February 26, 2024 opinion and order of the Schuylkill County Court of Common Pleas (trial court) overruling Taxpayer's Objections to the September 18, 2023 upset sale of her property located at 59 Hazle Street in Delano, Schuylkill County (Property) to Marek Tchorzewski (Purchaser). Upon review, we reverse and remand.

## I.    Factual and Procedural Background

      On September 18, 2023, the Property, located at *59 Hazle Street*, was exposed to an upset tax sale by the Schuylkill County Tax Claim Bureau (Bureau) for delinquent taxes. Taxpayer filed Objections on October 19, 2023. A hearing was held on December 20, 2023.

      Russell T. Motsko, a Clerk Typist II, testified on behalf of the Bureau. Mr. Motsko testified that for notice purposes the address for Taxpayer that the Bureau

had on file was *300 E. Beech Street*, Hazleton, Pennsylvania (300 E. Beech Street address). (Reproduced Record (R.R.) at 11.)[1] The 300 E. Beech Street address was also provided as Taxpayer's address on the Deed for the Property. *Id.* at 29. Mr. Motsko testified that two certified mailings, the 2021 and the 2022 Entry of Claim notices, were sent to the 300 E. Beech Street address. Both were returned signed to the Bureau but included no printed name.[2] *Id.* at 12-13. Because the taxes for the Property remained delinquent, the Bureau sent a Notice of Sale, certified mail restricted delivery, to the 300 E. Beech Street address. *Id.* at 14. That Notice of Sale was addressed to "Maldonado Norberto Aleyda" and returned to the Bureau as "unclaimed." *Id.* at 15; Original Record (O.R.) at 29. The Notice of Sale contained the following language: "NO PAYMENTS WILL BE ACCEPTED ON UPSET SALE PROPERTIES AFTER 4:30 PM ON LAST BUSINESS DAY BEFORE September 18, 2023!" *Id.* at 52.

The Bureau then sent a "ten-day letter" to "Maldonado Norberto Aleyda" at the 300 E. Beech Street address on August 10, 2023, via first-class mail. (R.R. at 15; O.R. at 24.) The 10-day letter was not returned to the Bureau in any manner as being an incorrect address or undeliverable. R.R. at 16. The Bureau next posted a notice of the impending sale on the front door of the Property. *Id.* The sale was also duly advertised in the Republican Herald, the South Schuylkill News, and the Schuylkill Legal Record. *Id.* at 17. The advertisements contained the following notice:

---

[1] The pages in the Reproduced Record are not properly numbered as required by Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173 (requiring pages of the reproduced record to be numbered separately in Arabic figures followed by a small "a," thus 1a, 2a, 3a, etc.). For convenience, the page numbers referenced herein are consistent with the Reproduced Record.

[2] Taxpayer does not, nor could she at this juncture, challenge the validity of the underlying tax claim or raise deficiencies with the 2021 and the 2022 Entry of Claim notices. Rather, she is seeking to set aside the tax sale. She cannot do so by raising defects with the Bureau's notice of entry of claims. *Zelno v. Lyons*, 245 A.3d 1185, 1186-87 (Pa. Cmwlth. 2021).

"PROPERTIES WILL NOT BE OFFERED FOR SALE IF 2021 AND PRIOR YEAR TAXES ARE PAID BEFORE 4:30 P.M. ON FRIDAY, SEPTEMBER 15, 2023." *Id.* at 34, 42.

On cross-examination, Mr. Motsko explained that the reason the notices were addressed to "Maldonado Norberto Aleyda" was because the Bureau's notices are generated based upon tax assessment records and that was how Taxpayer's name appeared. *Id.* at 19. Mr. Motsko also confirmed that it is the policy of the Bureau not to accept payments of delinquent taxes after 4:30 p.m. on the last business day before the sale and that the Bureau "does not accept payment the day of the sale." *Id.* at 22-24.

Taxpayer testified on her own behalf. She testified that her name was "Aleyda Maldonado Norberto." *Id.* at 31. She denied that 300 E. Beech Street was her address and testified that she had not lived there since 2012. *Id.* at 30-31. Instead, she said that she lived at the Property since she purchased it in July of 2020. Taxpayer stated that she paid the 2022 and 2023 taxes on the Property. *Id.* at 31. She denied signing the return receipts for the 2021 and 2022 Entry of Claim notices and denied that the signatures were hers. *Id.* at 31-32; 59-61. She testified that her father lived at 300 E. Beech Street but that the signatures on those receipts were not his. *Id.* at 32, 61. She did not know who signed the receipts because no one lived at 300 E. Beech Street except for her father. *Id.* at 61.

Taxpayer testified that when she returned from "an emergency trip" she learned of the tax sale through a neighbor who indicated that people had been walking around her Property. *Id.* at 37-38. She said that on the morning of the sale, she "rushed" to the Bureau's office to pay the taxes with cash. However, she was told she could not pay them. *Id.* at 38-39. She said that, at the time she tried to pay the taxes,

the bidding had just started and that the Property had not yet been sold. *Id.* at 40. On cross-examination, Taxpayer was asked to show her Pennsylvania and Massachusetts driver's licenses, which showed her name as "Maldonado Norberto Aleyda." *Id.* at 43.

On February 26, 2024, the trial court entered an order overruling Taxpayer's Objection. The trial court acknowledged that the Bureau is required under the Real Estate Tax Sale Law (RETSL)[3] to undergo reasonable efforts to discover the whereabouts of the Taxpayer when, as in this case, the mailed Notice of Sale is returned without the required receipted personal signature of the addressee. 72 P.S. § 5860.607(a). (Trial Ct. Op., 2/26/24, at 5-6.) However, it found that, even though the Notice of Sale was returned to the Bureau as "unclaimed," the testimony of Taxpayer established that she had "actual notice" of the upset sale because "she testified that she had been notified of the sale through a neighbor" and that "she was present at the [u]pset [s]ale *and attempted to buy back the property* but was unable to." *Id.* at 4 (emphasis added). Therefore, the trial court concluded that the Bureau's lack of formal adherence to the RETSL did not invalidate the sale. *Id.* at 6. With respect to Taxpayer's argument that the Notice of Sale and advertised notices were illegal because of the language regarding the Bureau's policy of not accepting payments of taxes after 4:30 p.m. on the last business day before the sale, the trial court found that any such defects in these notices were immaterial because, "despite being aware of the sale, [Taxpayer] *made no effort to pay the taxes* or set up a payment plan with the Bureau." *Id.* (emphasis added). The trial court further reasoned that Taxpayer's "testimony was that *she intended to buy back the property* at the upset sale, *not that she was planning on paying her delinquent taxes on the date of the sale*." *Id.* (emphasis added).

---

[3] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

## II.    Issues[4]

Taxpayer argues that the Bureau failed to prove that it complied with the RETSL's notice requirements because (1) the Bureau had no proof of service of the Notice of Sale sent certified-restricted delivery because it was returned "unclaimed;" and (2) her first and last names were listed in the incorrect order on the Notice of Sale and 10-day notice.  She further asserts that the Bureau's policy to not accept payments after 4:30 p.m. on the Friday before the sale violates Section 603 of the RETSL, which requires the Bureau to allow taxpayers to make payment prior to "the actual sale."  For these reasons, she contends the sale should be set aside.

## III.    Analysis

### A. Compliance with the RETSL's Notice Requirements

a)  Whether the Bureau was Required to Take Further Steps Because the Notice of Sale Sent Certified-Restricted Delivery was Returned "Unclaimed"

Taxpayer argues that the Bureau did not comply with the notice provisions of the RETSL, and, therefore, the tax sale should be set aside.  She contends that when the Notice of Sale sent certified-restricted delivery to the E. 300 Beech Street address was returned "unclaimed," the notice requirements of the RETSL were not met.  Therefore, the Bureau was required to make "reasonable efforts" to discover the

_____

[4] We review a trial court's decision denying a petition to set aside an upset tax sale to determine whether the trial court abused its discretion, committed an error of law, or rendered a decision not supported by substantial evidence.  *In re Balaji Investments, LLC*, 148 A.3d 507, 509 n.2 (Pa. Cmwlth. 2016).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Obimak Enterprise v. Department of Health*, 200 A.3d 119, 126 (Pa. Cmwlth. 2018) (citation omitted).  "It is the exclusive province of the trial court, as factfinder, to weigh the evidence, make credibility determinations and to draw reasonable inferences from the evidence presented."  *Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003) (citation omitted).  If the trial court's findings of fact are supported by substantial evidence, we "may not disturb those findings on appeal."  *Id.* (citation omitted).

whereabouts of Taxpayer after its certified mailing to her was returned as unclaimed. (Taxpayer's Br. at 7.)

Section 602 of the RETSL requires that the property's owner be given notice by publication, posting on the property, and certified mail. 72 P.S. § 5860.602; *see In re Tax Claim Bureau of Columbia County 2023 Real Estate Tax Sale*, 329 A.3d 811, 815 (Pa. Cmwlth. 2025). Section 602(e) outlines the requirements for the certified mailing:

> (1) [a]t least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner . . . [and]
>
> (2) [i]f return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the [tax] bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the [tax] bureau to determine the last post office address known to said collector and county assessment office.

72 P.S. § 5860.602(e).

The RETSL requires additional notification efforts when circumstances raise "significant doubt as to the personal receipt by the owner." *Williams v. County of Monroe*, 303 A.3d 1098, 1101 (Pa. Cmwlth. 2023). This includes when "such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged

6

at all." 72 P.S. § 5860.607a(a). Those additional notification efforts are provided under Section 607.1 of the RETSL, 72 P.S. § 5860.607a.[5] Section 607.1 of the RETSL states that reasonable efforts include, "but [are] not necessarily [ ] restricted to:" (1) a search of current county telephone directories, (2) a search of dockets and indices of the county tax assessment offices, (3) a search of the recorder of deeds office and the prothonotary's office, and (4) contact with alternate addresses or telephone numbers that may be included in the property file. 72 P.S. § 5860.607a(a). "When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof[.]" 72 P.S. § 5860.607a(a).

Pertinent here, we have held that the additional notification requirements are triggered when the certified mailing is returned unclaimed. In *Clemmer v. Fayette County Tax Claim Bureau*, 176 A.3d 417, 420-21 (Pa. Cmwlth. 2017), this Court held that the tax claim bureau failed to comply with the RETSL where it "simply sent the first class mailing of the notice to the same 'address on file'" after the certified mailing came back as unclaimed. *Id.* at 422. The tax claim bureau provided no evidence or testimony that it "did anything to find an alternative address" or to "document that a reasonable effort was made." *Clemmer*, 176 A.3d at 422. *See also Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247 (Pa. Cmwlth. 2003) (tax sale was properly set aside based on tax claim bureau's failure to comply with notice requirements of Section 607.1 where husband and wife separated, wife moved out, husband signed receipt for separate notice addressed to his wife, and post-sale notices were returned as "unclaimed"); *Halpern v. Monroe County Tax Claim Bureau*, 558 A.2d 197 (Pa. Cmwlth. 1989) (setting aside tax sale where notices mailed to an owner were returned

---

[5] Section 607.1(a) of RETSL, added by the Act of July 3, 1986, P.L. 351.

7

as unclaimed and tax claim bureau made no additional efforts to locate the owner as required by Section 607.1).

Here, as in *Clemmer*, the Notice of Sale was returned "unclaimed." That, alone, was enough to trigger the Bureau's automatic duty to conduct additional notification efforts under Section 607.1. *See* 72 P.S. § 5860.607a; *see also Clemmer*. However, the Bureau did nothing other than to simply send the 10-day letter to the same address to which the unclaimed certified mailing was sent. The Bureau did not testify that it conducted further searches for alternative addresses and did not document via a notation in the property file about the efforts and results. Therefore, we agree with the trial court that the Bureau failed to strictly comply with the notice requirements under the RETSL.

This does not end our inquiry, however. Even though the trial court found that the Bureau failed to comply with the RETSL in this regard, it found that the error was inconsequential because the testimony of Taxpayer "established" that she had "actual notice" of the upset sale. The trial court noted Taxpayer's testimony of being "notified of the sale through a neighbor," but its interpretation of the facts was that when she arrived at the Bureau's office, "*she intended to buy back the property at the upset sale, not that she was planning on paying her delinquent taxes on the date of the sale.*" (Trial Ct. Op., 2/26/24 at 5-6) (emphasis added). Our standard of review requires us to determine if those factual findings are supported by substantial evidence. We find that they are not.

First, the trial court's finding that Taxpayer did not try to pay her delinquent taxes when she arrived at the Bureau's office was not supported by substantial evidence but is, in fact, directly contradicted by the *undisputed* facts of

8

record.  During her testimony, Taxpayer specifically stated that she came to the Bureau on the morning of the sale in order to pay her taxes:

> Q.  And you made . . . a trip down to the county *to pay your taxes*?
>
> A.  *Yes*.
>
> . . .
>
> Q.  And you realized -- you found out *they would not accept payment for your taxes*, correct?
>
> A.  *Yes*.
>
> . . .
>
> Q.  Okay.  And then you learned that [sic] *could not pay your taxes prior to sale*.  Is that correct?
>
> A.  *Yes*.
>
> Q.  And you said -- you indicated *you had the actual cash to pay those taxes*.  That is correct?
>
> A.  *Yes*, she was actually very surprised 'cause my bag was open and all the money was there.
>
> . . .
>
> Q.  . . . *you attempted to pay your taxes*[,] *and it wasn't accepted*.  Is that correct?
>
> A.  *Yes*.

R.R. at 38, 39, 40 (emphasis added).  The Bureau did not offer any evidence to contradict Taxpayer's testimony.

The trial court had no justification for not accepting Taxpayer's uncontradicted testimony that she tried to pay her delinquent taxes with cash on the morning of the sale before bidding started.

Moreover, the trial court's finding that Taxpayer had "actual notice" of the sale evidenced by her appearance at the sale on the morning thereof is also not supported by substantial evidence. Where a record owner has actual notice of a tax delinquency and a scheduled sale of the property, the technical notice requirements of the RETSL may be waived. *Sabbeth v. Tax Claim Bureau of Fulton County*, 714 A.2d 514 (Pa. Cmwlth. 1998). "The property owner's actual knowledge of a sale, *in time to protect his due process rights*, is sufficient to overcome deficiencies in the formal notice requirements." *In re Tax Sale of Real Property Situate in Paint Township, Somerset County*, 865 A.2d 1009, 1017 (Pa. Cmwlth. 2005) (emphasis added); *Casaday v. Clearfield County Tax Claim Bureau*, 627 A.2d 257, 259 (Pa. Cmwlth. 1993) (holding that a property owner must have actual notice "in sufficient time for her to react to prevent the sale or protect her interests"). In *Lerza-Keubler v. Monroe County Tax Claim Bureau*, 983 A.2d 1252 (Pa. Cmwlth. 2009), we held that a tax sale of a property would be set aside because the record did not establish when the property owner had actual notice of the tax sale by seeing the posting. We emphasized that the property owner must have actual notice "in time to prevent the sale or to protect her due process rights." *Id.* at 1253. In *In re 1999 Tax Claim Bureau of Consolidated Returns*, we stated that "[e]ven actual notice may not be sufficient if it is not received in time for one to make payment of the taxes." 820 A.2d 833, 835 (Pa. Cmwlth. 2003).

Here, the Bureau's policy was to not accept payments of delinquent taxes after 4:30 p.m. on the Friday before the tax sale. To establish *sufficient* actual notice, Taxpayer would have had to show up before *4:30 p.m. on the Friday before the tax sale*

10

because that was the deadline set by the Bureau for payment of delinquent taxes. The fact that Taxpayer appeared at the Bureau's office *on the morning of the sale* could not possibly establish *sufficient* "actual notice" because, according to the Bureau's policy, Taxpayer could not do anything to save her Property from the tax sale. Sufficient actual notice requires proof that that Taxpayer received notice in time to correct the tax delinquency and stop the sale. That proof was lacking in this case.

Accordingly, we find that the trial court erred by disregarding the Bureau's failure to comply with the RETSL's notice requirements on the mistaken grounds that Taxpayer (1) had sufficient actual notice of the sale and (2) failed to attempt to pay her delinquent taxes on the morning of the sale.

b) <u>Error in the Order of Taxpayer's Name</u>

Taxpayer argues that the RETSL's notice requirements were not met because the Notice of Sale and "ten-day letter" were addressed to "Maldonado Norberto Aleyda" instead of "Aleyda Maldonado Norberto." That is, the notices placed Taxpayer's first name after her surname.

The standard with which to determine whether the error or misspelling of a taxpayer's name satisfies the notice requirements is as follows: "(1) the name, as misspelled, is essentially the same as the name correctly spelled, (2) the misspelled name adequately identifies the owner[,] and (3) the party is not prejudiced by the misspelling." *Aldhelm, Inc. v. Schuylkill County Tax Claim Bureau*, 879 A.2d 400, 404-05 (Pa. Cmwlth. 2005).

In *Aldhelm*, the taxpayer sought to void the upset sale due to the misspelling of the company's name as "Aldheim" instead of "Aldhelm" in all the notices sent to the taxpayer. *Aldhelm*, 879 A.2d at 402-03. However, the company's president signed all notices with the misspelling without alerting the tax claim bureau

11

to the mistake; nor did the company ever notify the locality of the mistake or refuse to pay taxes made out to "Aldheim." *Id.* at 402, 405. This Court refused to "allow [the appellant] to exploit a typographical error even it chose to overlook for many years." *Id.* at 405. This Court rejected the taxpayer's argument that the misspelling violated the strict notice requirements noting that the misspelling adequately identified the party given that the company accepted notices with that name, no one was misled, and the petitioner suffered no prejudice. *Id.* at 405.

Here, Taxpayer's name was not misspelled but arranged with her last name first and first name last without a comma to differentiate the two. While a comma would have helped, having the last name first and first name last is "essentially the same" as if it was first and last name respectively for purposes of the RETSL. We find that "Maldonado Norberto Aleyda" was sufficient to identify "Aleyda Maldonado Norberto" as the intended recipient. Taxpayer does not argue that "Maldonado Norberto Aleyda" was a different person. We also note that this is the way her name appeared on her Pennsylvania and Massachusetts driver's licenses. (O.R. at 2-3.) Last, Taxpayer cannot point to any prejudice suffered by how her name was ordered on the notices. We find that, in this instance, this type of error where the order of Taxpayer's first and surnames is switched does not affect the validity of the tax sale. Therefore, we conclude that Taxpayer did not lack notice due to any error in the order of her name.

**B. The Bureau's Policy Imposing a Payment Deadline of 4:30 p.m. on the Friday Preceding the Upset Sale**

Taxpayer argues, as she did below, that the Bureau's policy not to accept payments after 4:30 p.m. on the Friday before the sale was contrary to Section 603 of the RETSL, which requires the Bureau to allow taxpayers to make payment prior to "the actual sale." The trial court disposed of the argument by concluding that, even if the Bureau's policy violates Section 603 of the RETSL, Taxpayer was present on the

12

morning of the sale to *buy* the Property instead of to *pay her delinquent* taxes. As we have just explained, the trial court erred in this regard. There is no question that Taxpayer went to the Bureau on the morning of the sale and attempted to pay her taxes. As such, the trial court was obligated to go on to consider whether the Bureau's policy to stop accepting payments three days earlier, on Friday, September 15, at 4:30 p.m., pursuant to which it denied Taxpayer the opportunity to pay her delinquent taxes on the morning of the sale, violated Section 603 of the RETSL.

Section 603 of the RETSL provides: a homeowner may, "*prior to the actual sale*, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment." 72 P.S. § 5860.603. Section 102 of the RETSL, in turn, defines "actual sale" as "*payment of the full amount of money agreed to be paid as the sale price by the successful bidder or purchaser at upset sale. . . .*" 72 P.S. § 5860.102 (emphasis added).

In *Weber v. Clearfield County Tax Claim Bureau* (Pa. Cmwlth., No. 635 C.D. 2015, filed January 7, 2016), WL 100232 (unreported),[6] homeowners became delinquent on their taxes. The tax claim bureau provided all required notices under the RETSL. The sale was scheduled for September 12, 2014. The tax claim bureau had a policy of not accepting payments after 4:30 p.m. on the Friday before the sale. One of the homeowners appeared and offered payment of the delinquent taxes on the morning of the upset sale but the tax bureau refused to accept her payment due to its policy. The property was sold and the homeowners filed objections. The trial court sustained the homeowners' objections to the sale because they had the right under Section 603 of the RETSL to pay the back taxes before the "actual sale," which the trial court found only

---

[6] *Weber* is an unreported opinion. Under Section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

occurs when the purchaser pays the full purchase price. The trial court concluded that the homeowner tendered payment of the taxes to a tax claim bureau clerk before the bidder had completed payment. This Court affirmed the trial court on the basis of its opinion.

Even though unreported, we find the law as espoused in *Weber* to be persuasive and applicable to this case. The clear and unambiguous language of Sections 603 and 601 of the RETSL provides that an actual sale of a subject property does not occur until the successful bidder pays the full amount of money agreed to be paid as the sale price. In this case, the bidding was ongoing when Taxpayer arrived at the Bureau's office. Had the trial court not misconstrued the undisputed evidence as to Taxpayer's intention upon arriving at the Bureau's office on the morning of the tax sale, the inescapable conclusion is that the Bureau should have accepted Taxpayer's offer of payment. Its policy of not accepting payments after 4:30 p.m. on the Friday before the sale is directly contrary to Sections 603 and 601 of the RETSL, which provide that a taxpayer has up until the time the bidder pays full purchase price to make payment of the delinquent taxes in order to remove the property from sale.

Based on the foregoing, we reverse and remand for an entry of an order setting aside the tax sale.

_____
PATRICIA A. McCULLOUGH, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aleyda Maldonado Norberto,  :
                  Appellant  :
                    :
        v.  :    No. 315 C.D. 2024
                    :
Schuylkill County Tax Claim Bureau  :
and Marek Tchorzewski  :

## *ORDER*

AND NOW, this 3rd day of December, 2025, the February 26, 2024 order of the Schuylkill County Court of Common Pleas is hereby REVERSED, and the above-captioned matter is remanded for entry of an order setting aside the tax sale.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge